UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES KOBERMANN, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-03083-SRC |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent. | ) | |

**Memorandum and Order**

James Kobermann Sr. filed an Amended Petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his attorney provided ineffective assistance by choosing an all-or-nothing strategy at his trial. Doc. 21. Because the Missouri Court of Appeals's denial of these same claims was not contrary to, or an unreasonable interpretation of, clearly established federal law, the Court denies the Amended Petition.

I.   **Facts and Background**

According to 28 U.S.C. § 2254(e), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The Missouri Court of Appeals described the pertinent facts as follows:

> [O]n July 1, 2014, 19-year-old James Kobermann, Jr. [("Kobermann Jr.")]; his girlfriend, Carol Volkert ("Volkert"); and his father, [James Kobermann Sr. ("Kobermann")], were at [Kobermann's] home located in Bonne Terre where he lived with other relatives. While there, [Kobermann] called Aaron Jackson ("Jackson") to ask about acquiring drugs, and thereafter, [Kobermann], [Kobermann Jr.], and Volkert traveled to Jackson's home in Festus. When they arrived, [Kobermann] handed money to Jackson, and Jackson told them to return later in the day to retrieve the drugs, so they left. When they returned a few hours

later, Jackson handed [Kobermann] a small bag containing heroin. [Kobermann] gave the bag to Volkert, and [Kobermann], [Kobermann Jr.], and Volkert traveled back to [Kobermann]'s home.

When they returned, Volkert gave the heroin back to [Kobermann], and [Kobermann] and [Kobermann Jr.] went into a bedroom and crushed it. [Kobermann] then split some of the heroin and gave part of it to [Kobermann Jr.] before both inhaled their shares. They moved to the living room, and a few hours later, [Kobermann Jr.] indicated that he wanted more, so he and [Kobermann] returned to the bedroom, and [Kobermann] split another portion of the heroin, giving part of it to [Kobermann Jr.]. [Kobermann Jr.] began complaining that he did not believe that he was receiving his "fair share," so [Kobermann], in response, slid a larger share toward [Kobermann Jr.].

[Kobermann] and [Kobermann Jr.] then returned to the living room, and Volkert entered the bedroom to begin cleaning it. Soon thereafter, [Kobermann Jr.] also entered the bedroom to lay down on the bed, and Volkert saw that [Kobermann Jr.]'s lips were purple. Eventually, Volkert noticed that [Kobermann Jr.] had lost consciousness, and she unsuccessfully attempted to wake him. Volkert called for [Kobermann], who, after performing C.P.R., was able to revive [Kobermann Jr.], but when Volkert noted that she wanted to call 911, [Kobermann] responded "he's fine, I've been through this before, I've done it for a while, and he just needs to sleep it off."

Later that day, however, between 5:00 p.m. and 6:00 p.m., [Kobermann Jr.] had to be revived again, and after doing so, Volkert and [Kobermann] moved [Kobermann Jr.] to a chair in the living room. Volkert instructed [Kobermann] not to allow [Kobermann Jr.] to fall asleep again, then left for work to make a 9:30 p.m. shift. When she returned at about 12:30 a.m. on July 2, however, [Kobermann Jr.] was asleep on the couch, and both Volkert and [Kobermann] were unsuccessful in their attempts to wake him. [Kobermann], therefore, moved [Kobermann Jr.] to the floor of the bedroom, telling Volkert to "just let him sleep it off." [Kobermann] and Volkert then went to sleep.

When Volkert awoke later that morning, she found that [Kobermann] had already left for work and noticed that [Kobermann Jr.], who had not moved from his spot on the floor, was barely breathing and appeared not to have a pulse. Following a 911 call, [Kobermann Jr.] was transported to the emergency room via ambulance.

Later that day, deputy coroner and Lieutenant of the St. Francois County Sheriff's Department, Gregory Armstrong ("Armstrong"), received a call from the hospital informing him that [Kobermann Jr.] was deceased. When Armstrong arrived at the hospital, he found [Kobermann], Volkert, and other family members at the emergency room, and in interviewing them, he suspected that [Kobermann] was involved, in some manner, in [Kobermann Jr.]'s death. Armstrong interviewed [Kobermann] on July 3, at which time [Kobermann] admitted that he set up the sale

2

>with Jackson to purchase heroin, and that he, in fact, made that purchase. [Kobermann] explained, however, that while he and [Kobermann Jr.] were consuming it, he warned [Kobermann Jr.] "not to do anymore [sic] heroin" before giving [Kobermann Jr.] the second share. A subsequent autopsy conducted upon [Kobermann Jr.] confirmed that [Kobermann Jr.] died as a result of heroin intoxication.

Doc. 22-9 at pp. 2–4.

The State of Missouri charged Kobermann with distributing the heroin to his son and with felony murder of his son (predicated on the felony distribution). Doc. 22-18 at p. 3. At trial, Kobermann's attorney argued that Kobermann and Kobermann Jr. possessed the heroin jointly, meaning that there was no distribution and thus no felony on which to predicate the murder. *Id.* at pp. 5–7. Kobermann's attorney then pursued an all-or-nothing strategy in which he did not request jury instructions for possession or involuntary manslaughter, apparently hoping for complete acquittal on the distribution and felony-murder charges. *Id*. The strategy failed. Following the court's denial of Kobermann's oral motion for judgment of acquittal, a jury convicted Kobermann on both counts. The court sentenced Kobermann to life in prison for the murder, with a 30-year sentence for distribution running consecutively to the life sentence. *Id.* at p. 2.

On direct appeal, Koberman argued that the trial court erred in overruling his motion for judgment of acquittal. Doc. 22-7. The Missouri Court of Appeals affirmed. Doc. 22-8. Kobermann then moved for post-conviction relief in state court, raising three ineffective-assistance-of-counsel claims involving his trial counsel's failure to: (1) submit a possession instruction; (2) submit an involuntary manslaughter instruction; and (3) consult Kobermann about this trial strategy. Doc. 22-12. The motion court rejected all three claims, Doc. 22-13, and the Missouri Court of Appeals affirmed, Docs. 22-17, 22-18. Kobermann next filed a petition for habeas corpus under 28 U.S.C. § 2254. Doc. 1. Kobermann now renews his first and second

3

ineffective-assistance-of-counsel claims in his Amended Petition, Doc. 21, which the Court addresses below.

## II.     Standard

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254[.]" *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005), *as amended* (June 21, 2005).  Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).  Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254).  For a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  A determination of a factual issue made by a state court is presumed correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence.  § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of

4

[the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). An unreasonable application of clearly established Supreme Court precedent occurs where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court's decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

### III. Discussion

Kobermann raises two grounds for relief in his Amended Petition. Doc. 21. Both grounds for relief consist of ineffective-assistance-of-counsel claims. First, Kobermann argues that his trial counsel was ineffective for failing to request an instruction regarding the lesser-included offense of possession. Second, he argues that his trial counsel was ineffective for failing to request a lesser-included involuntary-manslaughter instruction. *Id.* at pp. 7, 20.

As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated these claims "on the merits" within the meaning of § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 301 (2013). Accordingly, Kobermann cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

The Sixth Amendment grants a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To obtain reversal of a conviction for ineffective assistance of counsel, "the defendant must show that counsel's

5

performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. "[C]ounsel's representation" is deficient if it "[falls] below an objective standard of reasonableness." *Id.* at 688. Because "[t]here are countless ways to provide effective assistance," a court must presume that counsel's conduct is reasonable, and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). A deficient performance prejudices a defendant where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This probability must be "sufficient to undermine confidence in the outcome" of the case. *Id.*

Because § 2254(d) mandates reversal of a state-court rejection of post-conviction relief only when the state-court ruling was itself an unreasonable application of clearly established federal law, ineffective-assistance-of-counsel claims under § 2254 are reviewed under a "doubly deferential" standard. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Under that standard, the Court "take[s] a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Id.* (first quoting *Strickland*, 466 U.S. at 689; and then quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 (2009)). In other words, "[Kobermann] must demonstrate that it was *necessarily* unreasonable for the [Missouri Court of Appeals] to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's [verdict]." *Id.* (emphasis added).

"The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with

6

unreasonableness under § 2254(d)." *Id.* "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* With this guidance in mind, the Court addresses Kobermann's two ineffective-assistance-of-counsel claims in turn.

### A.    Ground one

In his first ground for relief, Kobermann argues that his trial counsel was constitutionally ineffective under *Strickland* in failing to request an instruction on possession as a lesser-included offense to distribution. Doc. 21 at pp. 7–10. Kobermann argues: (1) that he was entitled to a possession instruction; (2) that his trial counsel's "all-or-nothing" strategy was unreasonable; and (3) that the absence of a possession instruction prejudiced him because the jury would "probably [have] voted for possession and not distribution" and because "the risk of a felony murder conviction was heightened" by the absence of a possession instruction. *Id.*

The Missouri Court of Appeals denied Kobermann relief on this claim. Doc. 22-18 at pp. 8–11. The court noted that the state conceded that an instruction for "possession as a lesser-included offense could have been submitted" had Kobermann's counsel requested it. *Id.* at p. 9. However, under *Strickland*'s "performance prong," the court noted that Kobermann "readily admit[ted]" his trial counsel pursued an "'all-or-nothing' strategy, and ma[de] no allegation or argument beyond the conclusory statement [that] the choice not to submit possession as a lesser included offense[] was unreasonable." *Id.* at p. 10. The Missouri Court of Appeals concluded that it "could not contest the objective reasonableness of trial counsel's strategy to focus on the heightened element of distribution . . . to negate both charges under what [Kobermann] has admitted to be an 'all-or-nothing' strategy." *Id.* (citing *Jackson v. State*, 205 S.W.3d 282, 286 (Mo. Ct. App. 2006) ("[M]ovant's counsel cannot be convicted of being ineffective for seeking

7

to employ the best defense for [her] client by not offering the jury a middle ground for conviction.")).

While the Missouri Court of Appeals denied Kobermann's possession-instruction claim on the performance prong alone, it also examined the prejudice prong "for thoroughness." Doc. 22-18 at pp. 10–11.  The court reasoned that "the jury found, specifically and beyond a reasonable doubt, Kobermann 'knowingly distributed heroin' three times:  first, in the instruction for felony murder, cross-referenced and conversed by the distribution charge; next, in the distribution charge; and finally, in the converse instruction for the distribution charge." Doc. 22-18 at pp. 10–11.  The court concluded:  "[w]e cannot find prejudice in the face of such repeated findings of the jury."  *Id.* at p. 11 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." (citing *Strickland*, 466 U.S. at 695)).

Kobermann argues that the Missouri Court of Appeals's conclusions regarding both *Strickland* prongs were objectively unreasonable.  Doc. 21 at pp. 11–20.  The Court disagrees. As explained below, it was reasonable for the Missouri Court of Appeals to conclude:  (1) that Kobermann's trial counsel's "all-or-nothing" strategy was not deficient, and (2) that Kobermann failed to show prejudice from the lack of a possession instruction.

As mentioned, the Court must review Kobermann's § 2254 ineffective-assistance claim under a "doubly deferential" standard.  *Cullen*, 563 U.S. at 190.  Further, deciding whether to seek a lesser-included offense instruction is generally a strategic decision requiring even experienced counsel to make difficult judgment calls.  *See, e.g.*, *Driscoll v. Delo*, 71 F.3d 701, 715 (8th Cir. 1995); *Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997); *Riley v. Lockhart*, 726 F.2d 421, 423 (8th Cir. 1984).  To overcome these presumptions, Kobermann raises an argument

8

he did not make in state court—that his trial counsel's "all-or-nothing" strategy was "at odds with the defense presentation admitting [Kobermann]'s crime of possession."  Doc. 21 at p. 11.

To support his argument, Kobermann cites *McNeal v. State*, 412 S.W.3d 886 (Mo. 2013), a Missouri Supreme Court case relying on *Beck v. Alabama*, 447 U.S. 625 (1980)—a pre-*Strickland* United States Supreme Court case holding that, in death-penalty cases, defendants are entitled to a lesser-included offense instruction as a matter of due process.  However, in *Beck* the Supreme Court observed that "there is a significant constitutional difference between the death penalty and lesser punishments," 447 U.S. at 637, and as the Eighth Circuit has noted, the Supreme Court has never extended *Beck* to non-death-penalty cases.  *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("The Supreme Court 'has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases.'" (quoting *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007))).  Thus, Kobermann's reliance on *Beck* is unpersuasive here in the context of a non-death-penalty ineffective-assistance-of-counsel analysis under *Strickland*.

In sum, Kobermann has not overcome the presumptions regarding his counsel's performance, or shown that Missouri Court of Appeals's performance-prong finding—that Kobermann's trial counsel reasonably focused on the "heightened element of distribution . . . to negate both charges under what [Kobermann] has admitted to be an 'all-or-nothing' strategy," Doc. 22-18 at p. 10—was necessarily an unreasonable application of *Strickland*.  *Cullen*, 563 U.S. at 190.  The Court denies Kobermann's first ground for relief on this basis.

Additionally, even assuming the Missouri Court of Appeals's performance finding was an unreasonable application of *Strickland*, Kobermann fails to show that the same is true of the Missouri Court of Appeals's lack-of-prejudice finding.  As mentioned, under *Strickland*'s

9

prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court also emphasized that "[t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 694; *see also Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009). The Missouri Court of Appeals noted this presumption and, in light of the jury's finding regarding distribution, found no prejudice occurred. Doc. 22-18 at pp. 10–11.

Kobermann points to evidence presented at trial supporting his trial counsel's closing argument. Doc. 21 at pp. 16–17. However, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Having reviewed the record, the Court agrees with the Missouri Court of Appeals that the jury's verdict would not have been different had it received a possession instruction. *See Strickland*, 466 U.S. at 695; *Gianakos*, 560 F.3d at 821. The Court denies Kobermann's first ground for relief on this basis, as well.

    **B.**    **Ground two**

In his second ground for relief, Kobermann argues that his trial counsel was constitutionally ineffective under *Strickland* in failing to request an instruction for involuntary manslaughter as a lesser-included offense to felony murder. Doc. 21 at pp. 20–21. The Missouri Court of Appeals denied Kobermann relief on this claim, holding that, among other things, "Kobermann could not have been prejudiced by a failure to request such an instruction because the trial court did not have to submit a requested instruction for involuntary manslaughter." Doc. 22-18 at p. 7.

10

Kobermann disagrees with the Missouri Court of Appeals regarding the involuntary manslaughter instruction, arguing that he proved that "an involuntary manslaughter instruction would have been given had it been requested." Doc. 21 at p. 21. However, "[a]ny argument that the Missouri Court of Appeals misapplied Missouri law on this point is not properly before [the Court]." *Kennedy v. Kemna*, 666 F.3d 472, 485 (8th Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991))).

In *Arnold v. Dormire*, a habeas petitioner argued that his trial counsel was ineffective for "fail[ing] to request a jury instruction on false imprisonment as a lesser-included offense of kidnapping." 675 F.3d at 1085. The Eighth Circuit noted that in addressing this claim, the Missouri Court of Appeals had held that "under Missouri law [the petitioner]'s trial counsel did not act unreasonably by failing to request the lesser-included offense instruction, because Arnold was not entitled to such an instruction." *Id.* at 1086. Affirming the denial of habeas relief, the Eighth Circuit stated: "We do not second-guess the decision of a Missouri state court on Missouri law." *Id.* (citing *Bounds v. Delo*, 151 F.3d 1116, 1118 (8th Cir. 1998) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (quoting *Estelle*, 502 U.S. at 67–68))); *see also Becker v. State*, 260 S.W.3d 905, 912 (Mo. Ct. App. 2008) ("[We will not deem trial counsel ineffective for failing to request a jury instruction to which a defendant is not entitled." (citing *State v. Clark*, 914 S.W.2d 441, 443 (Mo. Ct. App. 1996))); *Clark*, 914 S.W.2d at 443 ("Counsel is not ineffective for failing to make a request which has no merit.").

When considering Kobermann's second ground for relief, the Missouri Court of Appeals determined—as a matter of state law—that Kobermann was not entitled to an involuntary manslaughter instruction. Doc. 22-18 at p. 7. The Court may not second-guess that state-court

11

determination of state law. *Arnold*, 675 F.3d at 1085.  Thus, as in *Arnold*, the Missouri Court of Appeals's conclusion—that Kobermann "could not have been prejudiced" by his trial counsel's decision not to ask for an instruction that the trial court would have denied, Doc. 22-18 at p. 7—was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *see Arnold*, 675 F.3d at 1085; *see also Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010) ("It is not 'well outside the boundaries of permissible differences of opinion' to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place." (internal citation omitted)).

Additionally, "even if the failure to give an instruction did constitute a violation of state law, habeas relief can be granted only if the failure amounted to a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Arnold*, 675 F.3d at 1086 (cleaned up).  Kobermann does not claim that such a defect exists here.  *See* Doc. 21.  And as mentioned, the Eighth Circuit has observed that "[t]he Supreme Court 'has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases.'" *Arnold*, 675 F.3d at 1086 (quoting *Carney*, 487 F.3d at 1097).  Accordingly, the Court denies Kobermann's second ground for habeas relief.

        **C.**       **Request for an evidentiary hearing**

In the "Prayer for Relief" section of his Amended Petition, Kobermann included a one-sentence request that the Court hold an evidentiary hearing "in which he may prove his claims." Doc. 21 at p. 29.  The Court "note[s] that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) contains 'mandatory restrictions barring evidentiary hearings in most federal

12

habeas proceedings' under § 2254." *Crawford v. Norris*, 363 F. App'x 428, 429 (8th Cir. 2010) (quoting *Williams v. Norris*, 576 F.3d 850, 859 (8th Cir. 2009) (citing § 2254(e)(2))). Thus, "[o]nly if the habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by § 2254(e)(2)." *Id.* (quoting *Williams*, 576 F.3d at 860).

Here, "[Kobermann] does not contend that he exercised diligence in seeking to develop the factual basis of his ineffective assistance claim in state court." *See id.* However, the state motion court denied Kobermann's post-conviction-relief motion without an evidentiary hearing, citing Rule 29.15(h) of the Missouri Supreme Court Rules. Doc. 22-13 at p. 5 ("The Court may deny Movant's motion without an evidentiary hearing if 'the motion and the files and records of the case conclusively show the movant is entitled to no relief.'"). The Missouri Court of Appeals affirmed. Doc. 22-17. Additionally, "[t]he state does not argue that [Kobermann] failed to develop the factual basis for his claim due to a lack of diligence." *Crawford*, 363 F. App'x at 429 (citing *Gingras v. Weber*, 543 F.3d 1001, 1004 (8th Cir. 2008)). Thus, the Court assumes that § 2254(e)(2) does not bar Kobermann's evidentiary-hearing request. *See id.* at 430.

However, the Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. This is because the "backward-looking language" of § 2254(d)(1)—which refers in the past tense "to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law"—"requires an examination of the state-court decision at the time it was made." *Id.* As the state courts adjudicated both of Kobermann's § 2254(d)(1) claims on the merits, Kobermann is not entitled to an evidentiary hearing regarding those claims. *See id.*

13

**D.     Certificate of Appealability**

The Court finds that Kobermann has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court does not issue a certificate of appealability as to any claims raised in Kobermann's § 2254 petition.

**IV.    Conclusion**

The Court denies Kobermann's [21] Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, and dismisses the Amended Petition with prejudice. The Court denies Kobermann's request for an evidentiary hearing. The Court does not issue a certificate of appealability.

Dated this 24th day of February 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

14